TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00653-CR






Robert Gallardo, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0984569, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING







 Robert Gallardo appeals from his conviction for sexual assault. See Tex. Penal
Code Ann. § 22.011(a)(1)(A) (West Supp. 2000). After a jury found Gallardo guilty of the
offense, the court assessed punishment at twelve years' confinement in the Texas Department of
Criminal Justice--Institutional Division. In two issues, Gallardo challenges the legal and factual
sufficiency of the evidence to support his conviction. We will affirm the trial court's judgment.


Background


 Complainant went out with appellant Gallardo and Mike Herrera on the evening
of July 13, 1998. It is not disputed that complainant had met Herrera about two and one-half
months earlier in Fort Worth and that they had had a sexual relationship. Herrera had visited
complainant in Austin and had met her son before the evening in question; she had never met
Gallardo. Gallardo, Herrera and complainant went out, while complainant's roommate babysat. 
They went to three different pool halls. Complainant remembered having two mixed drinks and
part of a beer, but did not remember anything after the third place they visited until she woke up
in the hospital. She testified that Gallardo brought her at least one round of drinks. She did not
remember having sex with either Herrera or Gallardo. She testified that she never had and never
would have consented to have, sex with anyone while her son was present in the apartment.

 Complainant's son testified that he was awakened by the shaking of the bed and saw
a man he had never seen before in bed on top of his mother. He said the man's "private part"
was in his mom's "private part." His mother was naked and appeared to be asleep. She was not
holding or kissing the man, who told him to leave and go watch television. The child noticed
Herrera, whom he recognized, asleep on the bedroom floor. His maternal aunt, Christine
Sanders, lived upstairs, so he went to her apartment and told her that his mother was getting hurt.

 Sanders said that she was awakened by her nephew who told her that he had been
told to watch television by the man who was making the bed shake; he was afraid. She went
down to complainant's apartment and, hearing no response to her yells for her sister, she
attempted to enter the bedroom. She could not get in because someone was holding the door
closed. She went to the kitchen to get a knife to try to pry the door open; when she returned, the
door opened easily. She saw her sister nude on the bed, but no one else was in the room. The
window was open with the screen busted out. She unsuccessfully attempted to awaken her sister
by yelling at her and slapping her. She called 911 from the living room. As she did so, Gallardo
came in and picked up a piece of paper that was by the telephone. She told him to stay while she
called the police, but he promptly left again.

 Tara Vela, complainant's roommate, testified that she was awakened by knocking. 
She went out of her bedroom and saw Gallardo sitting on the sofa. Vela went back into her
bedroom. She was awakened again when Gallardo came into the room asking something about
using a different phone. She told him to leave and went back to sleep until she was awakened by
Sanders's yelling. Vela went into the bedroom and attempted to help awaken complainant. Vela
also saw Gallardo reenter the apartment and pick up a paper next to the telephone.

 Elizabeth Cantu, a paramedic, testified that she and her partner found complainant
unconscious on a bed. She could only arouse the victim by the use of several ammonia capsules,
but even then she "faded in and out." Complainant was very groggy and lethargic but said that
she was experiencing vaginal pain and had been sexually assaulted. The paramedics and Sanders
assisted her with getting dressed and transported her to the hospital. William Poole, a Travis
County Deputy Sheriff, arrived about 3:00 a.m. on July 14, 1998. He found the victim "totally
incoherent," unable to communicate with paramedics and "just totally like jelly."

 Lori Lang was the sexual assault nurse who examined complainant. Lang testified
that complainant smelled of alcohol, was "pretty much unconscious," and had lost control of her
bodily functions. Lang again had to use several ammonia capsules to arouse the victim, who
remained groggy and was unable to recall events of the evening. Lang collected specimens
according to a standard rape examination protocol. She testified that the victim suffered vaginal
and anal tears; on cross-examination Lang said that, in her experience, 80-87% of sexual
encounters, especially if one person is under the influence of alcohol and thus has relaxed
muscles, do not result in any visible injury such as complainant suffered. Cheryl Peyton and
Kelly Taylor, lab technicians, testified as to the chain of custody and said that complainant's blood
and urine tests showed an alcohol level of .13 at the time of testing, about 5:30 a.m. They
calculated that the blood alcohol level at 2:00 a.m. would have been .20. A drug screen for
cocaine, opiates, barbiturates, amphetamines, propoxyphene, tricyclenes, and benzodiazepine, was
negative. They also testified that Rohypnol, commonly referred to as the "date rape" drug, was
not found. However, its absence was not conclusive proof of lack of ingestion.

 Holly Dillard, a detective with the Travis County Sheriff's Office, testified that she
talked to Gallardo by telephone on July 17, 1998. Gallardo told her that he, Herrera and
complainant had gone out, that complainant had consumed ten to twelve drinks of Royal Crown
and Coke, and that she was "kissing on him" throughout the evening. They returned to the
apartment and Herrera and complainant went into the bedroom. After a while, he went in to see
if they were leaving or staying the night, and found Herrera asleep on the floor. According to
Gallardo, complainant invited him into her bed, and they engaged in consensual sex. He fell
asleep, but was awakened by banging on the door. Dillard testified that Gallardo told her that he
woke Herrera and they left through the window when the police were called because one of them
had outstanding traffic tickets in Fort Worth.

 Gallardo took the stand and testified in his own defense. His testimony was
basically the same as related by Dillard, except that he said that upon their arrival, he followed
Herrera and the victim into the bedroom where Gallardo and the victim engaged in intercourse
while she performed oral sex on Herrera. Gallardo then went into the living room, and returned
for a second encounter later.


Discussion


Legal Sufficiency

 In his first point of error, Gallardo contends the evidence was legally insufficient
to support the conviction. Gallardo was convicted of sexual assault "by causing his sexual organ
to penetrate the female sexual organ of [complainant] without [her] consent," in that he knew that
she was unconscious or physically unable to resist or was unaware that the assault was occurring. 
See Tex. Penal Code Ann. § 22.011(a)(1)(A), (b)(3), (b)(5).

 When the court reviews the legal sufficiency of a verdict, it does so in the light
most favorable to the verdict to determine whether a rational finder of fact could have found all
the elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998), cert. denied, 526 U.S.
1070 (1999). If there is evidence that establishes guilt beyond a reasonable doubt and if the fact
finder believes the evidence, the reviewing court is not in a position to reverse the judgment on
sufficiency of the evidence grounds. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988). The jury, the trier of fact, is entitled to resolve any conflicts in the evidence, to
evaluate the credibility of the witnesses, and to determine the weight to be given any particular
evidence. See id.

 Gallardo admitted having intercourse with complainant. The contested issue was
complainant's lack of consent. Gallardo argues that the victim's testimony needed corroboration
in order to establish an essential element of the crime, i.e., her lack of consent. No corroboration
requirement applies to this case. See Tex. Code Crim. Proc. Ann. Art. 38.07 (West Supp. 2000)
(conviction supportable on uncorroborated testimony of victim if victim informed any person,
other than defendant, of alleged offense within one year). Complainant testified about her lack
of consent and her loss of memory. She testified that she would not have brought anyone back
to the apartment to have sex when her son was present in the apartment. Complainant's son
testified that his mother seemed asleep and did not appear to kiss or hold the stranger, suggesting
she was unconscious. Several witnesses testified as to the difficulty of awakening complainant. 
The jury heard evidence that Gallardo would have had the opportunity to put a substance in
complainant's drink. The jury was entitled to conclude that, whatever the cause of her disability,
complainant was obviously incapacitated to the degree required by the charge. The jury was
aware of the victim's previous relationship with Herrera. The jury heard complainant testify; the
jury heard Gallardo testify. It was ultimately their province to determine which version of the
night's events they believed. We overrule Gallardo's first issue.

Factual Sufficiency

 When the court reviews the factual sufficiency of the evidence, it puts aside the
prism of the "light most favorable to the verdict." See Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd
untimely filed). The reviewing court considers all the evidence in a neutral light and reverses if
the verdict is so contrary to the overwhelming weight of the evidence as to be unjust. See
Johnson v. State, No. 1915-98, slip op. at 9 (Tex. Crim. App. Feb. 9, 2000); Santellan v. State,
939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 134. The jury's verdict,
however, should still be accorded due deference so that the reviewing court does not, in effect,
become the thirteenth juror. See Clewis, 922 S.W.2d at 133. The appellate court does not
interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility
of testimony. Unless the record clearly reveals that a different result was appropriate, an appellate
court should defer to the jury's determination concerning what weight to give contradictory
testimonial evidence because the jurors' resolution of such conflicts often turns on an evaluation
of credibility and demeanor that the jurors witnessed. See Johnson, slip op. at 12.

 We have detailed the evidence on both sides. Considering the evidence in a neutral
light, the verdict is not contrary to the overwhelming weight of the evidence. This is not a case
in which the record clearly reveals that a different result was appropriate; therefore, we defer to
the jury's determination concerning what weight to give contradictory testimonial evidence based
on their evaluation of the witnesses' credibility and demeanor. See id. We overrule Gallardo's
second issue.


Conclusion



 We have overruled both issues presented and hold that legally and factually
sufficient evidence supports the conviction. Accordingly, we affirm the trial court's judgment.



 
 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: June 15, 2000

Do Not Publish



r of fact could have found all
the elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998), cert. denied, 526 U.S.
1070 (1999). If there is evidence that establishes guilt beyond a reasonable doubt and if the fact
finder believes the evidence, the reviewing court is not in a position to reverse the judgment on
sufficiency of the evidence grounds. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988). The jury, the trier of fact, is entitled to resolve any conflicts in the evidence, to
evaluate the credibility of the witnesses, and to determine the weight to be given any particular
evidence. See id.

 Gallardo admitted having intercourse with complainant. The contested issue was
complainant's lack of consent. Gallardo argues that the victim's testimony needed corroboration
in order to est